UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
EUGENNIE DANIELS,

                    Plaintiff,

          -against-

US BANK NATIONAL ASSOCIATION,
AS TRUSTEE FOR CFSB HEAT 2007;
FRANKEL LAMBERT WEISS WEISMAN
& GORDON LLP,

                   Defendants.
--------------------------------------------------------x

**MEMORANDUM AND ORDER**
15-CV-5163 (RRM) (LB)

ROSLYNN R. MAUSKOPF, United States District Judge.

     *Pro se* plaintiff Eugennie Daniels, brings this action pursuant to the Federal Debt

Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 and the New York General Business

Law § 349 ("Section 349").  Defendants US Bank National Association, as Trustee for CFSB

HEAT 2007 ("USB") and Frankel Lambert Weiss Weisman & Gordon LLP ("FLWWG,"

collectively "defendants") moved separately to dismiss Daniels' complaint pursuant to Federal

Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim.  (USB Mem. Supp. Mot. to

Dismiss (Doc. No. 22-10) at 2; FLWWG Mem. Supp. Mot. to Dismiss (Doc. No. 25) at 3.)[1]  For

the reasons discussed below, defendants' motions to dismiss are granted and Daniels is granted

thirty (30) days leave to amend her complaint.

## BACKGROUND

     This action relates to a mortgage and foreclosure action involving real property at 575

East 28th Street in Brooklyn, New York.  (*See* Compl., Ex. B ("Corrective Assignment of

---

[1] For ease of reference, citations to court documents utilize ECF pagination.

Mortgage") (Doc. No. 1) at 17.)[2]  Daniels is the mortgagor of that property.  (*Id.*)  The mortgage was originally issued on June 28, 2006 and recorded on August 8, 2006 by Accredited Home Lenders, Inc.  (*Id.*)  USB alleges that Daniels defaulted on the note and mortgage as of August 1, 2007.  (Compl. (Doc. No. 1) ¶ 6.)

On January 17, 2008, the mortgage was assigned to "US Bank National Association, as Trustee for CSFB HEAT 2006-7."  (Corrective Assignment of Mortgage.)  The assignment was recorded on February 1, 2008.  (*Id.*)  On January 24, 2008, USB accelerated the mortgage and note by commencing a foreclosure action in the Supreme Court of New York Kings County (Index No. 2629/2008).  (Compl. ¶ 6.)  On July 16, 2012, a Corrective Assignment of Mortgage was executed to correct a scrivener's error in the February 1, 2008 assignment, correcting the mortgagee's name from "US Bank National Association, as Trustee for CSFB HEAT 2006-7" to "US Bank National Association, as Trustee for Credit Suisse First Boston Mortgage Securities Corp., Home Equity Asset Trust 2006-7, Home Equity Pass-Through Certificates, Series 2006-7."  (Corrective Assignment of Mortgage at 17.)

On March 3, 2014, Judge Sylvia G. Ash of Kings County Supreme Court issued a decision and order finding that the note related to Daniels' mortgage was "payable to [USB] as bearer" and that USB held "title to the note."  (Schiavo Decl., Ex. B ("3/3/14 State Court Order") (Doc. No. 22-3) at 3.)[3]  On July 29, 2015, Daniels served a Notice of Dispute, which she alleges required USB and FLWWG to "validate the alleged debt, and obtain verification from the

---

[2] On a motion to dismiss the Court may consider documents attached to the complaint, integral to the complaint, or documents of which a Court may take judicial notice.  *See Thomas v. Westchester Cty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002).  Because the Corrective Assignment of Mortgage is attached to Daniels' complaint, the Court may consider it in evaluating the motion to dismiss.

[3] The Court may take judicial notice of state court proceedings without converting a motion to dismiss into a motion for summary judgment.  *See Thomas*, 232 F. Supp. 2d at 276–77.

creditor." (Compl. ¶ 8.) She alleges that she received no such verification or validation. (*Id.*)
On December 21, 2015, Judge Ash issued the final judgment of foreclosure, granting USB's
motion "for a judgment of foreclosure and sale." (Dougherty Decl., Ex. A ("Judgment of
Foreclosure") (Doc. No. 22-7) at 4.)

Daniels alleges that the foreclosure action was a "debt collection action masquerading as
a foreclosure" and constitutes "an attempt to collect a debt" as defined by the FDCPA and asserts
that defendants provided "conflicting information regarding the alleged debt." (Compl. ¶¶ 7,
11.) She challenges the authenticity and validity of the documents USB and FLWWG claim she
executed, (*id.* ¶¶ 10, 13), despite Judge Ash's finding that this argument was without merit in the
state foreclosure action, (3/3/14 State Court Order at 2).

Daniels claims "significant harms, damages, [and] injuries as a result of defendants'
failure and or inability to obtain accurate, factual and reliable information regarding the alleged
current creditor and amount of the alleged debt." (Compl. ¶ 14.)

## STANDARD OF REVIEW

At this stage, the Court assumes the truth of the facts alleged in the complaint, and draws
all reasonable inferences in Daniels' favor. *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).
The Court is not, however, "bound to accept as true a[ny] legal conclusion couched as a factual
allegation." *Sharkey v. Quarantillo*, 541 F.3d 75, 83 (2d Cir. 2008) (quoting *Papasan v. Allain*,
478 U.S. 265, 286 (1986)).

In order to withstand defendants' motions to dismiss, Daniels' complaint "must contain
sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,
570 (2007)); *see also Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). Although the

complaint need not contain "detailed factual allegations," simple "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *see also Harris*, 572 F.3d at 72. Rather, the complaint must include "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, which means "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

The Court is also mindful, however, that Daniels is proceeding *pro se*. As such, her complaint is held to a less exacting standard than a complaint drafted by an attorney. *See Haines*, 404 U.S. at 520–21; *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008). Because *pro se* litigants "are entitled to a liberal construction of their pleadings," the Court reads Daniels' complaint to "raise the strongest arguments that [it] suggest[s]." *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (internal citations omitted). Nonetheless, the Court "need not argue a *pro se* litigant's case nor create a case for the *pro se* which does not exist." *Molina v. New York*, 956 F. Supp. 257, 260 (E.D.N.Y. 1995). Where a *pro se* plaintiff has altogether failed to satisfy a pleading requirement, the Court must dismiss the claim. *See Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997) (citation omitted).

## DISCUSSION

### I.  FDCPA

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692. To plead a FDCPA claim, a

plaintiff must show that (1) he has been the object of collection activity arising from consumer debt; (2) the defendant is a "debt collector" as defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA. *See Ogbon v. Beneficial Credit Servs., Inc.*, No. 10-CV-370 (GBD), 2011 WL 347222, at *4 (S.D.N.Y. Feb. 1, 2011); *see also* 15 U.S.C. § 1692.

### A. FDCPA Claim Against USB

Daniels fails to allege facts sufficient to state a claim that USB is a "debt collector" as defined by the FDCPA. Accordingly, Daniels' FDCPA claim against USB is dismissed.

The statute defines "debt collector" as a person either (1) involved "in any business the principal purpose of which is the collection of any debts," or (2) "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due [to] another." 15 U.S.C. § 1692a(6). Creditors seeking to collect their own debts are not considered "debt collectors" for the purpose of the FDCPA. *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 235 (2d Cir. 1998) ("As a general matter, creditors are not subject to the FDCPA."). The FDCPA defines a creditor as "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." *Id.* § 1692a(4). The statute further clarifies that a "debt collector" does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii).

Daniels alleges no facts suggesting that USB was assigned the debt for the purpose of collecting on it for some other entity. In fact, Daniels states that the "purported Assignment"

assigned both the mortgage and note to USB.[4]  (Compl. ¶ 13.)  This assertion is corroborated by

the Corrective Assignment of Mortgage, dated July 16, 2012, which assigns the "full benefit of

all the powers and of all the covenants and provisos" contained in the mortgage to USB.  Further,

the state court in foreclosure proceedings found the relevant note to be "payable to [USB] as

bearer" and that USB had "title to the note."  (3/3/14 State Court Order at 3.)  Nowhere in her

complaint does Daniels allege that any other party has come forward as the owner of her debt or

has initiated foreclosure proceedings on the property.  She merely asserts in conclusory fashion

that USB is, and admits to being, a debt collector.  (Compl. ¶¶ 7, 17.)

Daniels' assertion that USB should nonetheless be considered a debt collector because it

was assigned the mortgage after it was in default is unavailing.[5]  Even where an entity acquired a

defaulted debt, it is not a debt collector pursuant to the FDCPA where it does not engage in

collection activities "for another."  *Munroe v. Specialized Loan Servicing LLC*, No. 14-CV-1883

(MKB), 2016 WL 1248818, at *5 (E.D.N.Y. Mar. 28, 2016); *see also* 15 U.S.C. §§ 1692a(4), (6)

(stating that a "creditor" collecting a debt owed to itself does not fall under the FDCPA's

---

[4] Daniels alleges throughout her complaint that the assignment was defective and that the documents were not authentic.  (Compl. ¶¶ 10, 13.)  However, the state court in a foreclosure action against Daniels already determined that the assignment of the note and mortgage was not defective and was authorized.  Thus, the Court cannot entertain Daniels' attempt to re-litigate that issue.  (3/3/14 State Court Order; Judgment of Foreclosure at 4.)  *See Leather v. Eyck*, 180 F.3d 420, 424 (2d Cir. 1999) (under New York law, collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit"); *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) (pursuant to 28 U.S.C. § 1738 federal courts "must give a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered"); *see also Jacobs v. Law Offices of Leonard N. Flamm*, No. 04-CV-7607 (DC), 2005 WL 1844642, at *3 (S.D.N.Y. July 29, 2005) ("In cases where some of those factual allegations have been decided otherwise in previous litigation, . . . a court may take judicial notice of those proceedings and find that plaintiffs are estopped from re-alleging those facts.").

[5] USB argues that it purchased the mortgage in 2006 – before the default – as part of a "pooling and services" agreement.  As this is a motion to dismiss, the Court will not entertain USB's factual assertions, particularly those set forth in its memorandum of law.  Accordingly, the Court takes as fact Daniels' assertion that USB purchased the mortgage after default.  *See Harris*, 572 F.3d at 71 (stating that on a motion to dismiss, the court must assume that all allegations in the complaint are true and draw all reasonable inferences in favor of the nonmoving party).

definition of "debt collector," but the term "creditor" "does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another"). Where a plaintiff does not allege that "either [defendant's] principal purpose is the collection of debts or that [defendant] regularly collects debts owed another," and relies merely on the assertion that defendant "took an assignment of the alleged debt while the debt was allegedly in default," he has failed to state facts sufficient to state a claim that defendant is a debt collector under the FDCPA. *Izmirligil v. Bank of N.Y. Mellon*, No. 11-CV-5591 (LDW), 2013 WL 1345370, at *4 (E.D.N.Y. Apr. 2, 2013); *see also Schuh v. Druckman & Sinel, L.L.P.*, 602 F. Supp. 2d 454, 463 (S.D.N.Y. 2009) ("Whether a debt is in default at the time it is acquired by the person seeking to collect on it, however, is relevant only to an exception to the definition of debt collector. . . . Because the Schuhs have failed to allege that HSBC is a 'debt collector' in the first place, the statutory exception is irrelevant." (citation omitted)).

Thus, Daniels has failed to allege facts sufficient to state a claim that USB is a debt collector under the FDCPA. Accordingly, USB's motion to dismiss is granted.[6]

---

[6] USB argues in its reply that Daniels' FDCPA claims are also precluded based on the *Younger* abstention doctrine – which identifies a "longstanding public policy against federal court interference with state court proceedings, *Younger v. Harris*, 401 U.S. 37, 43 (1971), – *res judicata*, and collateral estoppel. (*See* USB Mem. Supp. Mot. to Dismiss at 8–11.) However, it is possible for Daniels to state an FDCPA claim that does not implicate the state court foreclosure action. *See, e.g.*, *Schuh*, 602 F. Supp. 2d at 467–69 (finding that an FDCPA claim alleging that a debt collector made false statements in a letter to the debtor was "independent from the transaction that was adjudicated in the state court – that is, the foreclosure on the mortgage and the amounts due under the [mortgagor's] loan" and thus not barred by the doctrines of *res judicata* and collateral estoppel). Accordingly, as discussed below, Daniels is granted thirty days leave to amend.

### B. FDCPA Claim Against FLWWG

Daniels has failed to state a claim that FLWWG engaged in an act or omission prohibited

by the FDCPA.[7]  Accordingly, Daniels' FDCPA claim against FLWWG is dismissed.

Daniels' primary claim appears to be that she submitted a notice of dispute pursuant to 15

U.S.C. § 1692g, and FLWWG "failed and omitted to validate the alleged debt" in response.

(Comp. ¶ 17.)  Section 1692g(a) states in part:

> Within five days after the initial communication with a consumer in connection
> with the collection of any debt, a debt collector shall . . . send the consumer a
> written notice containing . . . a statement that unless the consumer, within thirty
> days after receipt of the notice, disputes the validity of the debt, or any portion
> thereof, the debt will be assumed to be valid by the debt collector; [and] a
> statement that if the consumer notifies the debt collector in writing within the
> thirty-day period that the debt, or any portion thereof, is disputed, the debt
> collector will obtain verification of the debt or a copy of a judgment against the
> consumer and a copy of such verification or judgment will be mailed to the
> consumer by the debt collector.

15 U.S.C. § 1692g(a).  Section 1692g(b) further states,

> If the consumer notifies the debt collector in writing within the thirty-day period
> described in subsection (a)[,] . . . the debt collector shall cease collection of the
> debt, or any disputed portion thereof, until the debt collector obtains verification
> of the debt or a copy of a judgment.

15 U.S.C. § 1692g(b).

For a debt collector to violate this section of the FDCPA, there must be some initial

communication by the debt collector prompting the debtor's notice of dispute.  *See Derisme v.*

*Hunt Leibert Jacobson P.C.*, 880 F. Supp. 2d 339, 368 (D. Conn. 2012).  Otherwise, "[t]o permit

a consumer to unilaterally trigger a debt collector's duty to validate the debt would unduly

---

[7] FLWWG does not argue that it is not a debt collector as defined by the FDCPA.  (*See generally* FLWWG Mem. Supp. Mot. to Dismiss.)  *See also Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 60, 62 (2d Cir. 2004) (stating that "the FDCPA applies to attorneys 'regularly' engaging in debt collection activity, including such activity in the nature of litigation" and noting that mortgage foreclosures constitute "collection litigation").

burden and potentially frustrate a valid debt collection process. Requiring a debt collector to suspend or stay a foreclosure action following a consumer initiated communication outside of the legal proceeding would burden the courts unnecessarily as the judicial process affords a debtor an avenue to challenge the action by asserting any defenses she or he may have and requires that the debt collector prove its claim to the relief sought." *Id.*

Daniels has alleged no facts suggesting that FLWWG *initiated* any communication with her. She alleges that she served a Notice of Dispute on July 29, 2015, but nothing in the complaint asserts that this notice was in response to an initial communication by FLWWG. (*See* Compl. ¶ 8.) Because Daniels has failed to allege that FLWWG initiated communication with her in connection with the collection of a debt triggering its section 1962g obligations, she has failed to state a claim pursuant to Section 1692g(b).[8]

Daniels also alleges that FLWWG failed to cease and desist collection until the proper validation and verification had been obtained, (Compl. ¶ 19), that FLWWG provided conflicting information regarding the alleged debt, (*id.* ¶ 11), and that FLWWG engaged in harassing, oppressive, and abusive behavior while attempting to collect the debt, (*id.* ¶ 18).[9] Daniels has failed to allege any specific facts to support these assertions. Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a

---

[8] In her verified opposition, Daniels also acknowledges that FLWWG did indeed respond to her notice of dispute with a "Debt Validation Letter" that contained "payoff figures, payment history, reinstatement figures, [a] copy of a note and mortgage, [and a] copy of assignment." (Pl.'s FLWWG Opp'n (Doc. No. 25-1) at 8.) She goes on to state in conclusory fashion "[c]learly [FLWWG] did not comport to the statutory requirement § 1692g(a)(1)(2)." (*Id.*)

[9] FLWWG invites the Court to convert its motion to dismiss into a motion for summary judgment and to consider the validation letter FLWWG provided Daniels. (*See* FLWWG Mem. Supp. Mot. to Dismiss at 10 n.1.) Because Daniels attempts to assert claims that go beyond the mere existence of the validation letter, and because the Court finds that Daniels has failed to state a claim in her complaint, the Court declines to convert the motion.

claim. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Accordingly, the Court

dismisses Daniels' FDCPA claim against FLWWG.[10]

## II.     New York General Business Law § 349

Section 349 is a New York State consumer protection law prohibiting deceptive

practices. *Harary v. Allstate Ins. Co.*, 983 F. Supp. 95, 97–98 (E.D.N.Y. 1997). To establish a

cause of action under Section 349, a plaintiff must demonstrate that: (1) the defendant's

deceptive acts were directed at consumers; (2) the acts are materially misleading; and (3) injury

resulted from the acts. *See Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000). Section

349 "does not grant a private remedy for every improper or illegal business practice and cannot

fairly be understood to mean that everyone who acts unlawfully, and does not admit the

transgression, is being 'deceptive,' within the meaning of that statute." *Schlessinger v. Valspar

Corp.*, 723 F.3d 396, 399 (2d Cir. 2013) (internal quotation marks and citations omitted).

Consumer oriented conduct must be the "type of conduct that would have an impact on

consumers generally." *Harary*, 983 F. Supp. at 98. "A defendant will not be held liable under

§ 349 where the disputed private transaction does not have ramifications for the public at large."

---

[10] FLWWG asserts that Daniels' claims are barred by the *Rooker-Feldman* doctrine, which directs federal courts to abstain from considering claims where (i) the plaintiff lost in state court; (ii) the plaintiff complains of injuries caused by the state court judgment; (iii) the plaintiff invites district court review of that judgment; and (iv) the state court judgment was entered before the plaintiff's federal suit commenced. *Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89, 92 (2d Cir. 2012) (summary order). FLWWG asserts that, because Daniels filed a motion to dismiss in USB's state foreclosure action, she "clearly" could have raised allegations pertaining to the FDCPA and NYGBL. (FLWWG Mem. Supp. Mot. to Dismiss at 8–9.) FLWWG cites absolutely no legal support for this assertion. Moreover, the *Rooker-Feldman* doctrine only applies where a plaintiff complains of injuries *caused by* a state court judgment, and it is not clear that such is the case here. *See Gabriele*, 503 F. App'x at 92 (finding that, where a plaintiff raised an FDCPA claim based on a law firms conduct during a foreclosure action, the *Rooker-Feldman* doctrine did not bar the claim because the state court judgment did not cause the injury); *see also McKithen v. Brown*, 481 F.3d 89, 97–98 (2d Cir. 2007) ("[T]he *Rooker-Feldman* doctrine turns not on the *similarity* between a party's state-court and federal-court claims . . . but rather on the *causal relationship* between the state-court judgment and the injury of which the party complains in federal court."); *Derisme*, 880 F. Supp. 2d at 357 (noting that an FDCPA claim against a law firm prosecuting a foreclosure action is "an entirely distinct and separate claim" from a foreclosure action itself). To the extent that Daniels attempts to undo the state court judgment, her claim would be barred. *See Gabriel*, 503 F. App'x at 92. However, it is possible for Daniels to state an FDCPA claim that would not require any intrusion into the state court's foreclosure determination.

*Cohen v. Transp. Ins. Co.*, No. 10-CV-743 (GTS), 2011 WL 3650284, at *5 (N.D.N.Y. Aug. 18, 2011) (internal quotation marks omitted).

Here, the conduct alleged – failure to properly respond to Daniels' notice of dispute of a debt – is not an act that will have ramifications for the public at large.  The request for validation was sent with respect to Daniels' debt only and the alleged lack of response would not have an impact on consumers beyond Daniels.  Daniels' conclusory allegations that "[e]ach action alleged was consumer oriented" and that defendants' "recurrent pattern of deceptive conduct that is recurring . . . affects broadly the New York State consuming public," (Compl. ¶ 23), cannot save her claim.  *See Harary*, 983 F. Supp. at 99 (dismissing a Section 349 claim because a "conclusory assertion . . . that these acts have injured the public at large is insufficient to demonstrate that this dispute is anything other than one between the parties"); *Grand Gen. Stores, Inc. v. Royal Indem. Co.*, No. 93-CV-3741 (CSH), 1994 WL 163973, at *4 (S.D.N.Y. Apr. 22, 1994) (dismissing a Section 349 claim because "[e]xcept for a conclusory statement at the end of a list of allegations . . . Plaintiff has failed to include any evidence of the existence of a . . . policy designed to deceive the public at large").

Because Daniels fails to allege facts sufficient to show that defendants' conduct impacted the public at large, defendants' motions to dismiss her Section 349 claim are granted.

## III.    Leave to Amend

In light of the Court's duty to liberally construe *pro se* complaints, Daniels is granted thirty (30) days leave to file an amended complaint.  Daniels' amended complaint must set forth the legal basis for her claims and factual allegations in a clear and concise manner in order to

support her claims against defendants, and she must state the relief that she is seeking with respect thereto.

The amended complaint must be captioned "Amended Complaint" and bear the same docket number as this Order.  If Daniels fails to amend her complaint within thirty (30) days as directed by this Order, judgment shall be entered.

## CONCLUSION

For the reasons set forth above, defendants' motions to dismiss are granted.  Because of her *pro se* status, Daniels is granted thirty (30) days leave to amend her complaint.

The Clerk of Court is directed to send Daniels a copy of this Order and note the mailing on the docket.


SO ORDERED.

Dated: Brooklyn, New York
      September 28, 2016

*Roslynn R. Mauskopf*

_____
ROSLYNN R. MAUSKOPF
United States District Judge